ANDREW WHITE *vs.* ALBERT P. CHAPIN.

The right to the use of a ditch through the land of another, for the purpose of drainage, may be established by adverse use.

An actual use of such a ditch for that purpose for twenty years together, if unexplained, will be sufficient to establish the right; and if there is evidence of such actual use, for that length of time, the question should not be withdrawn from the jury unless there is clear proof that it was not adverse.

TORT for obstructing and filling up a ditch upon the defend-ant's land, through which the plaintiff claimed the right to have the water pass off from his land.

At the trial in the superior court, before *Ames,* J., William B. Dickinson testified that fifty-two years ago his father bought the land now owned by the plaintiff; that it was then boggy and covered with alders; that one Abby then owned the land now owned by the defendant, over which there was a ditch which was substantially in the same condition as when filled up by the defendant; that his father cut a ditch to connect with Abby's ditch, thus forming a continuous ditch, and cleared off the land, and in 1816 bought Abby's lot, after which he occupied both lots until he sold the Abby lot to one Stacy, and the other lot to the witness, who conveyed the same to the plaintiff in Decem-ber 1836.

The plaintiff testified that he had occupied his lot ever since December 1836, and there had been no change in the ditch through the defendant's land since he had known it; and said. " In 1837 I cleared it out with Stacy's consent; I told Stacy the ditch was getting filled up, and perhaps we had better clear it out. He said, ' It is more of a benefit to you than it is to me, but I will let my son go with your hired man and clear it.' They did so, and cleared it out. The next owner after Stacy was Foster Warner. I had no occasion for some time to clear it out, and do not think Warner owned for more than two or three years. After him, Rodolphus Graves owned for five or six years. War-ner and Graves kept the ditch clear. While they were there I had no occasion to say anything about it. Chapin bought about

sixteen years ago. After he came, it got filled up some. I sent my man to clear it. Chapin knew of it and carried off the muck that was thrown out. This was about twelve years ago. About five years ago, my hired man cleared it out again, and Chapin was there and took away the muck as before. Last year Chapin told me he was going to fill it up. Until then I never heard of any objection to my using the ditch, or supposed any one questioned my right to use it."

It was admitted that the defendant filled up the ditch, whereby the plaintiff's land was to some extent injured.

The judge ruled that the plaintiff was not entitled to recover without proof of continued adverse use for twenty years, and that the above evidence, if true, was insufficient to establish a · title to the easement claimed by him; and, by direction of the judge, the jury returned a verdict for the defendant. The judge reported the case for the determination of this court.

*J. Wells & W. Allen, Jr.,* for the plaintiff, besides cases cited in the opinion, cited *Barnes* v. *Haynes,* 13 Gray, 188; *Baker* v. *Crosby,* 9 Gray, 421; *Bolivar Manuf. Co.* v. *Neponset Manuf. Co.* 16 Pick. 247; *Blake* v. *Everett,* 1 Allen, 248; *Putnam* v. *Bowker,* 11 Cush. 542.

*C. Delano,* for the defendant, besides cases cited in the opinion, cited *Flagg* v. *Worcester,* 13 Gray, 601; *Parks* v. *Newburyport,* 10 Gray, 28; *Luther* v. *Winnisimmet Co.* 9 Cush. 171.

FOSTER, J. This is an action for the disturbance of an easement which the plaintiff claims in the premises of the defendant upon the following state of facts: An ancient ditch, the origin of which is unknown, began on the premises of the defendant, and, passing through the land of two other proprietors, emptied into a brook at the distance of half a mile. Fifty-one years before the trial, one Dickinson, who was then the owner of the plaintiff's lot, dug a ditch for its drainage, and connected it with the more ancient ditch, so as to empty into it, and, through it, into the brook. Nothing appears as to the circumstances under which the ditch was originally dug through the land now owned by the plaintiff. No title by adverse use, however, can be claimed on behalf of the plaintiff by virtue of the original

construction and immediately subsequent use ; because in less than twenty years the title to both the plaintiff's and defendant's lots became united in one owner, and so remained for upwards of twenty years ; and no one can acquire an easement in his own estate. *Ritger* v. *Parker*, 8 Cush. 145. Subsequently, at a date not precisely stated, the ownership of the two lots was again separated ; the lower lot, in which was the more ancient ditch, was conveyed by Dickinson to the grantor of the defendant, and a few years later Dickinson conveyed the upper lot to his son ; and the son, after some years' ownership, conveyed it to the plaintiff, who has held it since December 1836. The acquisition of the plaintiff's easement, if he has any, can therefore commence no earlier than the separation of the title to the two estates a few years prior to 1836.

No facts appear which tend to show an easement by necessity, impliedly reserved in the deed from Dickinson to the defendant's grantor, which severed the united ownership. An easement by necessity is implied only when necessary to the beneficial use of the estate for which it is claimed, and where no substitute for it can be obtained at a reasonable expense. Upon this ground there was no evidence for the consideration of the jury, and the ruling of the presiding judge was clearly correct. *Carbrey* v. *Willis*, 7 Allen, 364.

The more important and difficult question remains, whether the evidence tends to show an easement by adverse use. It is not a case of the flow of surface water from upper upon lower land over the natural surface of the earth, as to which the law is clearly settled that no length of time creates any easement by which the owner of the lower lot is precluded from using his own land as he will, although the natural overflow of water may be thereby stopped and set back upon the upper estate. *Dickinson* v. *Worcester*, 7 Allen, 19. Here was a ditch with channel and banks or sides as well defined as those of a natural brook. That there may be a prescriptive easement to enjoy the run of water from the dominant estate through the servient by such an artificial watercourse is well settled in this commonwealth. In reference to a raceway conducting off the water from a mill,

Chief Justice Shaw said, " It must be taken, according to estab⸗ lished rules of the law, that the run of such a canal through the land of another for the time stated is evidence of an antecedent grant." *Prescott* v. *White*, 21 Pick. 342.   And in another case, " It is immaterial whether the watercourse be natural or artificial." *Cary* v. *Daniels*, 5 Met. 238.   *Crittenton* v. *Alger*, 11 Met. 281.   The same doctrine has been applied to an ancient watercourse leading from the meadow of a plaintiff through the defendant's lot, where the water from the plaintiff's meadow and the rain which fell upon the same had been wont to run, thereby draining the plaintiff's meadow land, and rendering it arable and of great value. *Ashley* v. *Ashley*, 6 Cush. 70 ; *S. C.* 4 Gray, 197.   In the recent case of *Smith* v. *Miller*, 11 Gray, 145, where such a right of drainage was claimed, but on the facts as found by the verdict of a jury was decided not to exist, because the use had not been adverse but permissive and in accordance with the original agreement of the parties, the court said, "A right to an easement of that kind in the land of another may undoubtedly be acquired by the actual enjoyment of it, provided that the enjoyment is adverse, uninterrupted and of sufficient continuance and duration."

In the present instance, we suppose there is no question as to the existence of all these qualities except that of adverse use. As we understand the evidence reported, the water drained off the plaintiff's land through the ditch for more than twenty years after the separation of the ownership of the two lots, uninterruptedly, until the ditch was filled by the defendant.   " The actual exercise or enjoyment of the right contended for is *prima facie* evidence of prescription, and therefore, if uncontrolled, sufficient to show title to the easement which is claimed." *Smith* v. *Miller*, *ubi supra*.   Wherever there has been the use of an easement for twenty years unexplained, it will be presumed to be under a claim of right and adverse, and be suffic'ent to establish a title by prescription and to authorize the presumption of a grant, unless controlled or explained ; and it is incumbent upon the owner of the land to prove that the use of the easement was under some license, indulgence or special contract

inconsistent with a claim of right by the other party. Washburn on Easements, 90, 91, and cases there cited. The force of this presumption is in nowise diminished by the circumstance that both the plaintiff and the defendant claim under a common grantor.

The owner of the upper lot had no right to collect even surface water in a ditch or drain, and turn it in this form upon the lower land. The owner below might have lawfully obstructed such overflow or brought an action for the discharge of water upon him by a ditch, as well as if it had been from a spout or gutter. Washburn on Easements, 353 & seq. *Tillotson* v. *Smith*, 32 N. H. 90.

The fact that the running of the water did no appreciable or actual injury to the owner of the lower lot is immaterial. The law implies nominal damages from the invasion of a right, and every use may be deemed adverse which tends in any degree to impose a servitude or burden upon the estate of another. *Williams* v. *Nelson*, 23 Pick. 141. *Hastings* v. *Livermore*, 7 Gray, 194.

The same principles have been recognized by the courts of other states. " The discharges of an eave-spout, or the drainage of lands or mines, or any other temporary flow of water, even where positive and artificial measures are necessary to keep up the stream, if continued the requisite time, may give the right to the dominant owner to flow the water upon the land of the servient owner. For the acquiescence in what would be a nuisance, unless done by permission, will in law raise a presumption of a grant." *Norton* v. *Volentine*, 14 Verm. 246. There is no right as to surface water to dig a new channel for it, to and into the land of a lower proprietor. *Kauffman* v. *Griesemer*, 26 Penn. State R. 414. *Earl* v. *De Hart*, 1 Beasley, (N. J.) 280.

There is a class of English cases in which it has been held that where an owner above on his own land has for his own purposes collected the water and discharged it upon the land of his neighbor below, the latter does not by length of time acquire an easement entitling him to the continuance of the supply thus created. *Arkwright* v. *Gell*, 5 M. & W. 203    *Wood* v. *Waud,*

**3** Exch. 748. *Greatrex* v. *Hayward*, 8 Exch. 291. In the case last cited it was held that the flow of water from an agricultural drain for twenty years did not give the adjacent proprietor below such a right to the use of the water as to preclude the owner of the upper lot from cutting off the supply to improve his own land. But these cases have been repeatedly explained. The servitude which subjects the lower land to the continued discharge of water from an artificial cut above may be created under circumstances which do not establish a correlative right to the continuance of the discharge for the benefit of the lower estate. The submission to the exercise of an easement by the owner of the dominant estate, for his own purposes and in his own way, does not necessarily give the servient estate a right to the continuance of the easement imposed, because it is attended with incidental advantages to the latter. *Magor* v. *Chadwick,* 11 Ad. & El. 571. *Northeastern Railway* v. *Elliot,* 1 Johns. & Hem. 154. *Beeston* v. *Weate,* 5 El. & Bl. 986. The last case recognizes the principle as we have now stated it. And we are aware of no authority, English or American, which gainsays the doctrine that the upper proprietor, by use for a sufficient time, may acquire the right to keep open an ancient agricultural ditch through land below for the purpose of draining his own premises.

In our opinion, therefore, there was evidence from which a jury would have been authorized to infer that the plaintiff had acquired the easement he contended for, and the case was erroneously withdrawn from their consideration. There was also evidence as to the clearing out of the ditch by the owners of the upper lot, the construction and effect of which required to be submitted to a jury with appropriate instructions.

Inasmuch as the owner of such an easement as the plaintiff claims has the incidental right of going upon the land below and clearing out the ditch when obstructed, so that the water may drain or flow freely off from his premises, if the plaintiff, when it became necessary to do this, sought license or permission from the defendant and his predecessors, this would be evidence sufficient to rebut the presumption of a claim of right

to use the ditch, and would show that it was enjoyed permis- sively, and not adversely. If he had a right to the principal easement of drainage, he needed no license to avail himself of the incidental right to keep the ditch in condition to be an effi- cient drain. *Prescott* v. *White*, 21 Pick. 341.

The clearing of the ditch by consent, and by both owners together, may have been a joint repairing of a continuous water- course, in which each claimed a right, and which was main- tained and used for the benefit of both estates, the owner above consulting the reasonable convenience of the owner below as to the time and manner in which he should exercise the right of removing obstructions and of going upon the land of the latter for that purpose; or it may be that a license to do so was asked and obtained, which would recognize the paramount rights of the lower owner on his own premises, and show that the use of the ditch was not under a claim of right, but by consent and indulgence, and thus rebut the presumption of a grant upon which the plaintiff relies. These are questions which, upon the evidence reported, the court cannot as matter of law determine. They must be submitted to a jury. *New trial granted*